## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6510 | **DATE** | 10/14/2004 |
| **CASE TITLE** | Urbania vs. Central States, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The Court grants plaintiff's motion to amend the complaint, grants defendants' motion for summary judgment, and denies plaintiff's motion for summary judgment. Because plaintiff is not a prevailing party, plaintiff's motions for attorneys' fees and expenses of suit are denied. All pending motion are denied as moot.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | Number of notices | |
| | Notices mailed by judge's staff. | | OCT 15 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 84 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | JD  courtroom deputy's initials | 2004 OCT 14 PM 5:12 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW MARK URBANIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 00 C 6510 |
| ) | Judge George M. Marovich |
| CENTRAL STATES, SOUTHEAST AND ) | |
| SOUTHWEST AREA PENSION FUND, ) | |
| ) | |
| and ) | |
| ) | |
| THE BOARD OF TRUSTEES OF THE ) | |
| CENTRAL STATES SOUTHEAST AND ) | |
| SOUTHWEST AREAS PENSION FUND, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Urbania, Jr. ("Urbania") filed a one-count complaint against Central States Southeast and Southwest Areas Pension Fund ("Central States" or the "Fund") and the Board of Trustees of the Central States Southeast and Southwest Areas Pension Fund (the "Trustees"), alleging denial of disability benefits under the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the plaintiff has filed a motion to amend the complaint. For the reasons set forth below, the Court grants plaintiff's motion to amend the

complaint, grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment.

## BACKGROUND

The trustees administer the Fund and the Central States Southeast and Southwest Areas Pension Plan (the "Plan"). The Plan is a multi-employer pension fund covered by ERISA. Central States provides pension and disability benefits to covered participants who meet the requirements outlined in the Plan.[1]

With respect to the disability benefits Urbania seeks in this case, the Plan provides, in relevant part:

  (a)  A Participant who sustains a total and permanent disability as hereinafter defined
  (1)  Prior to his 62nd birthday; and
  (2)  after completion of 10 years of Credited Service (as defined in Section 3.03) if at least 35 weeks of contributions to the Pension Fund have been made or were required to have been made on behalf of the Participant during each of 5 calendar years of Covered Employment, or at least 225 weeks of contributions have been made or were required to have been to the Pension Fund on his behalf,

---

[1] The facts outlined in the background section are undisputed unless otherwise noted. Where one party supported a fact with admissible evidence and the other party denied the fact without citation to admissible evidence, the Court has deemed the fact admitted, pursuant to Local Rule 56.1. See Ammons v. Aramark Uniform Services, Inc., 368 F.3d 809, 817-818 (7th Cir. 2004).

Plaintiff filed a motion to strike portions of the affidavit of Albert E. Nelson, the Benefits Director for the Plan. Although plaintiff cites many portions of Nelson's affidavit to support his claim, plaintiff argues that Nelson lacks personal knowledge. Given that Nelson regularly attends the meetings of the trustees, the Court rejects plaintiff's argument and denies plaintiff's motion to strike the affidavit. See Militello v. Central States Southeast and Southwest Areas Pension Fund, 360 F.3d 681, 687 (7th Cir. 2004).

subject to the Break in Service provisions of
Section 3.05; and

(3) after contributions by his last Employer on his
behalf under a Collective Bargaining Agreement
providing for contributions in amounts at least
equivalent to those required for Contribution
Class 4 or above;

shall be eligible for a Disability Pension Benefit
under this Plan if he is entitled to disability
benefits payable under Title II of the Social
Security Act (as evidenced by a Certificate of
Social Insurance Award) or if said Participant has
sustained a disability which would satisfy the
medical and physical requirements for such
Certificate of Social Insurance Award where the
Participant did not receive such Certificate for
reasons unrelated to his medical and physical
condition.

\* \* \*

(c) Disability, as used herein, shall be deemed to be
total and permanent, for purposes of this section,
whenever the Participant is wholly disabled by
bodily injury or disease, and will as a result be
permanently, continuously and wholly prevented for
life from engaging in any occupation and
performing any work for wage or profit. The
Trustees will recognize as total and permanent
Disability the entire and irrevocable loss of
sight in both eyes, or the severance of both hands
above the wrist, or both feet above the ankle, or
one hand above the wrist and one foot above the
ankle.

(d) A Participant shall be eligible for a Disability
Pension Benefit if he sustains a total and
permanent disability while still in Covered
Employment or before sustaining 3 consecutive One-
Year Breaks in Service (as defined in Section
3.05(c)).

(Plan at Sect. 4.06). Section 3.05 of the Plan describes Breaks

in Service. Specifically, the Plan provides:

(c) On and after January 1, 1976, a Participant shall
sustain a One-Year Break in Service at the end of
any calendar year in which he receives less than
10 Vesting Service Weeks.

-3-

> \* \* \*
>
> (g) On and after January 1, 1976, solely for the purposes of determining whether a One-Year Break in Service shall be sustained, a Participant shall be deemed to have received 1 Vesting Service Week for each week in which he was not in Covered Employment as a result of sickness, injury, vacation or disability.

(Plan at Sect. 3.05). The Plan also provides that a Participant receives one Vesting Service Week for "each contribution which is made or is required to be made to the Pension Fund on his behalf". (Plan at Sect. 3.04(b)).

Urbania became a participant of the Central States Pension Fund due to his employment with various Teamster-industry employers, who made contributions on his behalf to the Fund. Urbania established 9.825 years of contributory service credit with Central States during his industry employment between 1965 and 1981.

Urbania's Central States-covered employment ended in 1981. After that, Urbania worked for employers not covered by the Plan. For example, in 1982 and 1983, Urbania worked for Page Avjet Corporation in Florida, earning approximately $7,800.00. On June 21, 1982, Urbania injured his back while working in the cockpit of an airplane during his employment with Page Avjet. Urbania filed a workers' compensation claim, which he settled in December 1983.

Urbania's next position was at Lodge No. 1851, of the Loyal Order of Moose in Sanford, Florida. In 1984, Urbania earned $2457.06 working for the Loyal Order of Moose. In 1985, Urbania

earned $2,548.64 working for Alexander-Seewald, Co., Inc. in Georgia and $180.00 working at Eagle Pools in Washington.

Urbania was injured again on October 16, 1986 while hanging drywall for D.J.'s Drywall, Inc. in Florida. Urbania again filed a workers' compensation claim, which he settled in June 1989.

In addition to workers' compensation, Urbania also received disability benefits from the Social Security Administration. Urbania received Social Security benefits from June 1982 through December 1983, from November 1986 through May 1988, and from June 1988 through at least October 1999.

In February 1998, Central States received from Urbania an application for disability benefits. In his application, Urbania stated that he suffered a job-related injury on June 21, 1982. Urbania stated that he was totally disabled, that it was necessary for him to give up all of his duties as of June 21, 1982 and that he had not done any type of work since June 21, 1982.

In support of Urbania's claim, his union submitted copies of Urbania's workers' compensation claims, Social Security awards and medical records. Among the documents submitted to the Plan was the Administrative Law Judge's October 1990 decision granting Urbania Social Security disability benefits. In the decision, the Administrative Law Judge ("ALJ") noted that Urbania had credibly testified that he became unable to work on June 1, 1988. The ALJ also found that Urbania had suffered an earlier back injury in 1982 but that he had been able to return to work.

Urbania was represented by an attorney in connection with the Social Security proceedings.

Attached to the ALJ's decision were Urbania's medical records, including records from Seminole Orthopaedics. A February 25, 1983 Seminole Orthopaedics medical entry stated, ". . . this man can return to work that does not require him to lift objects weighing more than 25 lbs. next to the axis of the body and objects weighing more than 10 lbs. at arms length from the body." In April 1983, Seminole Orthopaedics encouraged Urbania to return to a "bench job." In March 1988, Seminole Orthopaedics said Urbania was "capable of performing sedentary type work."

On February 17, 1998, Central States denied Urbania's claim for disability benefits on the grounds that he had less than the requisite ten years of service credit. Central States noted that it was still waiting for earnings information from the Social Security Administration and that once it received the information, it could determine whether Urbania would be allowed to make self-contributions to achieve the ten years of service credit. In April 1998, Central States informed Urbania that he did not qualify for disability benefits because "the information does not prove your absence due to illness from 1982 to 1988."

Urbania's union filed a Level I appeal (pursuant to the Plan's appeal procedures) on July 27, 1998. The union outlined the criteria (among other things, that one be disabled before the age of 62; that one receive a Social Security Award; that one be disabled before three one-year breaks in service; and that one

have ten years of service credit) and argued that Urbania had met the criteria. With respect to the ten years of service credit, the union asserted that Urbania should be allowed to make self-contributions so that he could achieve ten years of service credit.

On October 5, 1998, Central States informed Urbania that the Benefit Claims Appeal Committee had considered his appeal and had determined that he was ineligible for disability benefits under the Plan. First, the committee determined that Urbania failed to meet the requirement of ten years of service credit. Second, the committee concluded that Urbania did not become disabled until June 1988, i.e., after three consecutive one-year breaks in service. The committee explained that in order to be eligible for benefits, Urbania would have to establish that he were totally and permanently disabled at all times since December 31, 1983. Finally, Central States informed Urbania that he could further appeal the decision.

After another appeal, Central States again informed Urbania that he was not eligible for benefits because he did not become totally and permanently disabled until after he sustained three consecutive one-year breaks in service and because he did not have ten years of service credit.

Urbania's union submitted a Level III appeal on April 23, 1999. Once again, the Benefit Claims Appeal Committee concluded that Urbania was not totally and permanently disabled prior to sustaining three consecutive one-year breaks in service and that he did not have ten years of service credit. Accordingly, the

Benefit Claims Appeal Committee concluded that Urbania was not eligible for disability benefits under the terms of the Plan and denied his request for benefits.

Urbania then hired a private attorney, who asked Central States to reopen the administrative appeal. Central States denied the request to reopen the appeal on the grounds that the committee had already considered all of the material the attorney sought to provide the committee.

Urbania brought suit in this Court seeking review of the Plan's denial of benefits. The parties filed cross-motions for summary judgment on Urbania's claim, and plaintiff filed a motion to amend the complaint. For the reasons that follow, the Court grants plaintiff's motion to amend, grants defendants' motion for summary judgment and denies the plaintiff's motion for summary judgment.

## DISCUSSION

### I. Plaintiff's Motion to Amend

Leave to amend a complaint "shall be freely given when justice so requires." (Fed. R. Civ. P. 15(a)). Plaintiff seeks leave to amend his complaint by replacing the phrase "arbitrary and capricious" with "contrary to law" at three places in his complaint. Defendants have not shown that they would be prejudiced by the amendment. Thus, the Court grants plaintiff's motion to amend and deems the complaint amended. The amendments do not affect the outcome of the cross-motions for summary judgment. Defendants' motion to strike the motion to amend the complaint is denied.

## II. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir. 1994).

## III. The Decision of the Plan Administrator was not Arbitrary and Capricious

A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115(1989). Discretionary language in a trust agreement is "sufficient to trigger the arbitrary and capricious standard of review." Militello v. Central States Southeast and Southwest Areas Pension Fund, 360 F.3d 681, 686 (7th Cir. 2004).

The trust agreement in this case provides:

> The Trustees are vested with discretionary and final authority in making all [plan-related] decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund.

(Trust Agreement Art. V Sec. 2). This language is sufficient to confer discretion and trigger the arbitrary and capricious standard of review. See Militello, 360 F.3d at 686 (construing identical language).

Despite this discretionary language, plaintiff argues that defendants waived their right to deferential review when they entered a settlement agreement in the case of Dutchak v. Sullivan, Cases No. 76 C 3803 and 79 C 1725 (N.D. Ill.) (the "Dutchak Settlement"). In the Dutchak settlement, the defendants agreed "to resolve any conflicts among the various provisions of the Plan in favor of the participant." (Dutchak Settlement Art. III (E)(2)). Nothing in this provision, however, requires the defendants to eliminate the discretionary language from the Plan. Furthermore, plaintiff points to no conflict between the discretionary language and any other language in the Plan.

Accordingly, the Court will review the denial of benefits under the deferential arbitrary and capricious standard. In its deferential review, the Court's role is not to determine whether it would have made the same decision or relied on the same authority as the plan. Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014, 1021 (7th Cir. 1998). Rather, the Court considers whether the denial was

-10-

"downright unreasonable." Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 816 (7th Cir. 1997) (citing Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir. 1990)). A denial of benefits is not arbitrary and capricious if (1) it is based on a reasonable explanation; (2) it is based on a reasonable interpretation of the plan; or (3) the administrator has based his decision on a consideration of the relevant factors. Militello, 360 F.3d at 686.

As the Seventh Circuit explained in Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan, deferential review "means review on the administrative record." Perlman, 195 F.3d 975, 981-982 (7th Cir. 2000). Thus, this Court's review is limited to the information submitted to the Plan administrators for consideration of plaintiff's claim for benefits and plaintiff's appeal of the denial of benefits. Perlman, 195 F.3d at 982. The Court will not consider any evidence that was not submitted to the Plan administrators.[2]

### A. The plain language supports the Plan administrators' interpretation.

Here, the Plan administrators reasonably concluded that Urbania was not entitled to benefits under the terms of the Plan. The clear meaning of the terms of the Plan is that a participant must meet four conditions (among other things) before being eligible for disability benefits: (1) have ten years of credited

---

[2]Plaintiff's motion to file the supplemental affidavit of Konrad Kuczak is denied because the affidavit is outside the administrative record.

service; (2) be totally and permanently disabled, which the Plan defines as "wholly prevented for life from engaging in any occupation and performing any work for wage or profit"; (3) become disabled either while engaged in covered employment or before sustaining three one-year breaks in service; and (4) be eligible for Social Security disability benefits. (Plan Sect. 4.06 (a)-(d)). Because the criteria is evident from the plain language of the Plan, the Plan administrators' interpretation was not unreasonable. In addition, the fact that plaintiff's union interpreted the Plan the same way in its Level I appeal is further evidence that the Plan administrators' interpretation was not unreasonable.

The plaintiff argues that the Plan administrators acted arbitrarily and capriciously by not interpreting the Plan such that a person eligible for Social Security benefits was automatically entitled to benefits under the Plan. Plaintiff's desired interpretation is entirely unreasonable. The plain language of the Plan states that one must be both totally and permanently disabled (as that term is defined in the Plan) <u>and</u> eligible for Social Security benefits. (Plan Sect. 4.06 (a) & (c)). Eligibility for Social Security benefits is a necessary but not sufficient condition under the plain language of the Plan. The Plan administrators did not act arbitrarily or capriciously when they failed to adopt plaintiff's preferred interpretation.

### B. The Plan administrators' conclusion that Urbania did not meet the requirements was reasonable.

The Plan administrators reasonably concluded that Urbania had not met the terms of the Plan. First, it is undisputed that plaintiff had not obtained ten years of credited service and, thus, was not entitled to benefits under the Plan.

In addition, the Plan reasonably concluded that Urbania did not become totally and permanently disabled until June 1988. The Plan explicitly stated that in order to be considered totally and permanently disabled, one must be "wholly prevented for life from engaging in any occupation and performing any work for wage or profit." (Plan Sect. 4.06(c)). Plaintiff worked for various employers (Page Avnet, Loyal Order of Moose, Alexander-Seewald and D.J.'s Drywall, among others) during the years 1982-1986. In addition, the Plan administrators reviewed the decision of the ALJ granting plaintiff Social Security disability benefits. The ALJ noted that plaintiff had credibly testified that he became unable to work in June 1988. Given these facts, it was reasonable for the Plan administrators to conclude that plaintiff became disabled as of June 1988.

Because the Plan administrators concluded that plaintiff was not disabled until June 1988, the Plan administrators concluded that he was not disabled until after sustaining three consecutive one-year breaks in service. Under the plain terms of the Plan, one sustains a break in service at the end of any calendar year in which he receives less than 10 Vesting Service Weeks. A participant receives one Vesting Service Week for each

-13-

contribution made on his/her behalf to the Plan. Urbania's covered employment ended in 1981, and, thus, employers stopped making contributions on his behalf in 1981. Based on that information, the Plan administrators reasonably concluded that Urbania sustained a one-year break in service at the end of years 1982, 1983 and 1984. Because Urbania sustained three consecutive one-year breaks in service <u>before</u> becoming disabled in 1988, the Plan administrators concluded that he was not entitled to disability benefits under the Plan.

Urbania argues that the Plan administrators acted arbitrarily and capriciously when they failed to grant him Vesting Service Weeks for time when he was disabled due to injuries he sustained in employment that was not covered by the Plan. Plaintiff relies on the provision in the Plan which grants "1 Vesting Service Week for each week in which he was not in Covered Employment as a result of sickness, injury, vacation or disability." (Plan at Sect. 3.04(b)). Based on that provision, plaintiff argues he should have been granted Vesting Service Weeks for time that injuries or sickness kept him away from work for his subsequent employers. The Plan administrators did not grant plaintiff Vesting Service Weeks for time he was out of work after his covered employment ended in 1981 because under their interpretation of Sect. 3.04(b), it applies only to participants who are missing covered work due to sickness or injury. If one misses work for non-covered employers due to sickness or injury, the Plan does not grant a participant Vesting Service Weeks.

The Court finds the Plan administrators' interpretation to be reasonable. The inclusion of the word "vacation" in the provision illustrates why the Plan administrators' interpretation is reasonable. It makes sense for the Plan to ensure that a participant employed in covered work gets Vesting Service credit for weeks spent on vacation. With respect to individuals who have left covered employment for jobs in, say, teaching or pharmaceutical sales, however, it makes little sense for the Central States Plan to grant Vesting Service Weeks for their vacations from their teaching or sales jobs. The Plan administrators' interpretation is reasonable. In any case, even under plaintiff's interpretation, he still would have sustained three consecutive one-year breaks in service for the years 1984, 1985, and 1986, thereby rendering himself ineligible for disability benefits under the Plan.

For these reasons, the Court cannot say that the Plan administrators' denial of benefits was arbitrary and capricious. Defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, the Court grants plaintiff's motion to amend the complaint, grants defendants' motion for summary judgment, and denies plaintiff's motion for summary judgment. Because plaintiff is not a prevailing party, plaintiff's motions for attorneys' fees and expenses of suit are denied. All other pending motions are denied as moot.

ENTER:

George M. Marovich
United States District Judge

DATED: Oct. 14, 2004